FILED
12 OCT -9 PM 3: 14
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE WEBBER, an individual,<br><br>                            Plaintiff,<br>vs.<br><br>NIKE USA, INC., a Oregon corporation; NIKE, INC., a Oregon corporation; RICK GIELOW, an individual; and DOES 1 through 100, inclusive,<br>                           Defendants. | CASE NO. 12-CV-00974 BEN (WVG)<br><br>**ORDER REMANDING ACTION TO THE SAN DIEGO COUNTY SUPERIOR COURT**<br><br>[Docket No. 10] |

Presently before the Court is Plaintiff's Motion to Remand. (Docket No. 10.) For the reasons stated below, the Motion to Remand is **GRANTED**. This action is **REMANDED** to the San Diego County Superior Court.

## BACKGROUND

Plaintiff Steve Webber, a citizen of California, is a 56-year-old male who was employed by Defendants Nike, Inc. and Nike USA, Inc. (collectively "Nike") as an Executive Sales Representative selling Nike golf products to retailers in the San Diego area from June 2003 until his termination in 2011. (Compl. ¶¶ 1, 14.) Plaintiff alleges that he had performed competently and capably throughout his employment with Nike. (*Id.* ¶ 15.)

Defendant Rick Gielow, also a citizen of California, was Plaintiff's supervisor and Western

1  declined in 2010 due to Nike's change in inventory which was not subject to Plaintiff's control.
2  (Webber Decl. ¶¶ 6-8.) Gielow understood the situation, agreed that the sales goals were unattainable,
3  and repeatedly assured Plaintiff that his job was not in jeopardy based on the 2010 sales numbers. (*Id.*)
4  Nevertheless, on November 29, 2010, Gielow issued a written disciplinary action to Plaintiff for
5  failing to meet his annual sales goals. (*Id.* ¶ 5.)

6        Plaintiff further alleges that the 2010 written disciplinary action contained false statements with
7  regard to his performance in specific categories, the comparison of his sales to others without
8  considering the change in inventory, and the development of his swoosh staff member support. (*Id.*
9  ¶¶ 10-12.) Gielow again increased Plaintiff's sales requirements. (*Id.* ¶ 13.) When Plaintiff failed to
10 meet the goals, he was given a second and final disciplinary warning on January 19, 2011, which
11 imposed more requirements for him to meet within the next month. (*Id.*) Before he was able to meet
12 the new deadline, Gielow and Nike terminated Plaintiff on the basis of his "poor performance." (*Id.*
13 ¶ 14.) The termination notice also stated that Plaintiff was terminated for "unsatisfactory
14 performance." (*Id.*)

15       After his termination, Plaintiff learned that Gielow had told the president of one of Plaintiff's
16 retailers that Plaintiff had been terminated for poor performance. (*Id.* ¶ 16.) Plaintiff was also made
17 aware that Gielow told two of Plaintiff's Bowerman accounts about the 2010 disciplinary action while
18 he was still employed with Nike, which affected Plaintiff's ability to interact with two of his high
19 volume retailers and ultimately affected his performance in the final months of his employment. (*Id.*
20 ¶ 17.)

21       Plaintiff alleges that the golf sales industry in Southern California is a relatively small
22 community where retailers and distributors all know each other. (*Id.* ¶ 18.) He believed that Nike
23 and/or Gielow would disclose that he was terminated for poor performance to prospective employers.
24 (*Id.*) As a result, Plaintiff alleges that he believed that he had to tell prospective employers that
25 Defendants terminated him for poor performance. (*Id.*)

26       On February 16, 2012, Plaintiff filed this action in the San Diego County Superior Court,
27 naming Nike USA, Inc., Nike, Inc., and Gielow as Defendants. The Complaint asserts four causes of
28 action: (1) age discrimination in violation of Government Code § 12940; (2) wrongful termination in

violation of public policy in violation of the California Fair Employment and Housing Act ("FEHA"); (3) intentional infliction of emotional distress; and (4) defamation—slander per se. On April 19, 2012, Defendants removed the action under 28 U.S.C. § 1441, contending that the Court has diversity jurisdiction under 28 U.S.C. § 1332.

Presently before the Court is Plaintiff's Motion to Remand. Being fully briefed, the Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Congress has authorized a defendant to remove a civil action from state court to federal court. 28 U.S.C. § 1441. The removal can be based on federal question jurisdiction or diversity jurisdiction. *Id.* The Ninth Circuit strictly construes the removal statute against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

Nike removed the action under 28 U.S.C. § 1441, contending that the Court has diversity jurisdiction under 28 U.S.C. § 1332. Section 1332(a) provides, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." It is undisputed that both Plaintiff and Gielow are citizens of California. Nike argues that Gielow's citizenship should be disregarded because he was fraudulently joined only to defeat diversity.

To prevail under the fraudulent joinder theory, a defendant must show "'the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). The court must remand "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants . . . ." *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

In determining whether the joinder of a defendant was a sham, a court "may look beyond the pleadings and consider affidavits or other evidence to determine if the joinder was a sham." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). "A merely defective statement of the plaintiff's action does not warrant removal. It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent." *Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944).

Nike argues that none of the causes of action successfully states a claim against Gielow, and that Plaintiff has named him as a defendant solely to defeat diversity jurisdiction. The Court will consider the third cause of action for intentional infliction of emotional distress ("IIED") and the fourth cause of action for defamation, which are the only claims asserted against Gielow.

## I. THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under California law, the tort of IIED comprises three elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (2d Dist. 1998). Moreover, the extreme and outrageous conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but only to conduct that "'go[es] beyond all possible bonds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

First, Defendants argue that Plaintiff failed to allege extreme and outrageous conduct. Second, Defendants contend that discriminatory personnel management decisions do not constitute extreme and outrageous conduct as a matter of law. Third, Defendants argue that Plaintiff's IIED claim is barred by the exclusivity provision of the California Workers' Compensation Act.

///

A.   **The Allegation of Extreme and Outrageous Conduct**

Defendants argue that no extreme and outrageous conduct by Gielow was pled. However, as discussed above, the court may look beyond the pleadings and consider other materials in deciding fraudulent joinder.

In Steve Webber's Declaration, Plaintiff alleges facts that a reasonable jury may find constitute extreme and outrageous conduct. The specific acts alleged include: Gielow set Plaintiff's new sales goals that he understood to be unattainable (Webber Decl. ¶¶ 6-8); Gielow issued the November 2010 written disciplinary action that contained several false statements with regard to Plaintiff's overall sales performance as well as his performance in specific categories (*Id.* ¶¶ 10-12); although the second and final disciplinary warning gave Plaintiff until February 25, 2011 to meet the additional requirement, Gielow terminated his employment before the deadline (*Id.* ¶¶ 13-14); Gielow told the president of one of Plaintiff's retailers that Plaintiff had been terminated for poor performance (*Id.* ¶ 16); and Gielow told two of Plaintiff's Bowerman accounts about the disciplinary action while Plaintiff was still employed by Nike (*Id.* ¶ 17). As a result, Defendants fail to meet their burden to show Plaintiff cannot allege facts that may later be found to constitute extreme and outrageous conduct.

B.   **Personnel Management Decisions Serving as the Basis of IIED Claim**

Defendants cite *Janken v. GM Hughes Electronics* for the proposition that discriminatory personnel management decisions do not constitute outrageous conduct as a matter of law because they are a normal part of the employment relationship. 46 Cal. App. 4th 55 (1st Dist. 1996).

*Janken*, however, involved only conduct that was "within the realm of properly delegated personnel management authority," such as hiring and terminating. *Id.* at 79. While terminating an employee alone is insufficient to constitute extreme and outrageous conduct, a plaintiff may state a claim for IIED if the alleged acts go beyond the act of termination. *See Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1177 (N.D. Cal. 2003). A supervisor's deceptive conduct in denying a fundamental right or in violation of a fundamental interest of the employee may be sufficient to give rise to an IIED claim. *See, e.g., Dagley v. Target Corp., Inc.*, CV 09-1330 VBF (AGRx), 2009 WL 910558, at *3

(C.D. Cal. Mar. 31, 2009) (through her termination, plaintiff was denied her right to medical leave in a deceptive manner); *Hause v. The Salvation Army*, CV 07-5249 CAS (CWx), 2007 WL 4219450, at *10 (C.D. Cal. Nov. 27, 2007) ("plaintiff was lured back to work on false pretenses, mistreated at his job, and eventually fired by defendants"); *Gibson v. Am. Airlines*, C 96-1444 FMS, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996) (plaintiff was "denied the right to medical leave in a deceptive manner when other employees were given such a right").

Here, Plaintiff has alleged "fabrication of false performance issues, making false statements about Plaintiff's performance to a client, inflating sales goals he knew to be unreachable and falsely promising Plaintiff that he would have until 2/25/11 to satisfy the demands he was making." (Mot. at 13.) These acts are not within the scope of properly delegated personnel management authority and are deceptive in nature. In addition, this deceptive conduct was allegedly motivated by age discrimination, which could be found to violate Plaintiff's fundamental right to be free from discrimination. Thus, Defendants fail to meet their burden to show that there is no possibility for Plaintiff to state a claim for IIED against Gielow.

In addition, Defendants' reliance on *McCabe v. General Foods Corp.*, 811 F.2d 1336 (9th Cir. 1987), for the proposition that an IIED claim is barred by managerial privilege is misplaced. IIED is outside the scope of the managerial privilege. *Losik v. Current*, CV No. 92-20352 SW, 1992 U.S. Dist. LEXIS 20550, at *6 (N.D. Cal. Oct. 30, 1992). In addition, "[t]he [*McCabe*] court's reasoning in dismissing plaintiff's claim for intentional infliction of emotional distress did not rest on managerial privilege, but on the foundation that plaintiff had not shown the requisite 'outrageousness' to qualify for that tort claim." *Calero*, 271 F. Supp. 2d at 1179-80.

### C. The Exclusivity Provision of California Workers' Compensation Act

Defendants next argue that the IIED claim is preempted by the California Workers' Compensation Act. The court in *Cole v. Fair Oaks Fire Protection District* held that "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the

exclusive remedy provisions of the Labor Code." 43 Cal. 3d 148, 160 (1987). Defendants also argue that *Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990), bars recovery of physical injuries beyond the exclusivity provision of the Workers' Compensation Act.

Discrimination in employment, however, is not a normal incident of employment and thus is not barred by the exclusivity provision of the Workers' Compensation Act. *Accardi v. Super. Ct.*, 17 Cal. App. 4th 341, 347 (2d Dist. 1993), *disapproved on other grounds by Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 816 (2001). *Cole* and *Shoemaker* are both inapposite, as neither involves misconduct that goes beyond the normal scope of termination, such as deceptive conduct by the supervisor motivated by discrimination.

For the reasons stated, the Court finds that there is a non-fanciful possibility a California state court would conclude that Plaintiff can state a claim for IIED against Gielow.

## II. FOURTH CAUSE OF ACTION FOR DEFAMATION—SLANDER PER SE

The tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal quotation marks omitted).

First, Defendants argue that Plaintiff failed to allege any actionable statements of fact. Second, Defendants attack the sufficiency of publication. Third, Defendants argue that the alleged defamatory statement is privileged.

### A. The Allegation of Defamatory Statement

Defendants first argue that Plaintiff has not alleged any false statements of fact that may constitute a defamatory statement. A statement in the context of a performance evaluation cannot support a cause of action for libel[1] unless the evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence, or reprehensible personal characteristics or behavior. *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 965 (4th Dist. 1993); *see also Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153 (2d Dist. 1995). This is true even when the

---

[1] The same legal standard for defamation applies to both slander and libel. RESTATEMENT (SECOND) OF TORTS § 558 (1977).

employer's perceptions about the employee cannot be supported by "concrete, provable facts." *Gould*, 31 Cal. App. 4th at 1153; *Jensen*, 14 Cal. App. 4th at 966.

Plaintiff alleges that Gielow stated that Plaintiff was terminated for "poor performance." Defendants cite *Jensen* and *Gould* for the proposition that a statement about poor performance is a statement of opinion as a matter of law, and thus is not actionable. While *Jensen* and *Gould* involve statements regarding poor performance, they both took place in the context of a job performance evaluation. *See Gould*, 31 Cal. App. 4th at 1153 (plaintiff was accused of poor performance in his job assignment); *Jensen*, 14 Cal. App. 4th at 966 (poor performance was stated in a routine written performance evaluation by plaintiff's manager). Notably, the court in *Jensen* buttressed its conclusion on an analysis of the totality of the circumstances. 14 Cal. App. 4th at 970 ("The court examines the communication in light of the *context* in which it was published. The communication's meaning must be considered in reference to relevant factors, such as the occasion of the utterance, the persons addressed, the purpose to be served, and all of the circumstances attending the publication." (internal quotation marks omitted)).

Plaintiff argues, and the Court agrees, that the case at hand is distinguishable from *Jensen* and *Gould*. First, the statement of "poor performance" was not made in a job performance evaluation, but in the context of explaining to Plaintiff and his former clients why he was fired. *Reese v. Barton Healthcare Systems* similarly involved the use of a disciplinary action notice as the basis for termination. 693 F. Supp. 2d 1170, 1190 (E.D. Cal. 2010). The court in *Reese* concluded that the notice was not a performance evaluation as in *Jensen*, because it did not serve as a management tool. *Id.* Rather, it served as the factual basis for the plaintiff's immediate termination. *Id.* Second, the statement, when being construed in context, could be found to suggest that Plaintiff lacked the inherent competence, qualification, capability, or fitness to do his job. Third, the statement was allegedly fabricated to create a pretext for a discriminatory termination, thereby taking it outside the purpose of a management tool for evaluation and documentation of employees' performance.

Putting Gielow's statement in context, the Court finds that there is a non-fanciful possibility that a California state court could conclude that Plaintiff has alleged an actionable statement of fact that constitutes defamation.

### B. The Self-Publication Exception to the Publication Requirement

Defendants also attack the sufficiency of publication. Publication is defined as "a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (1st Dist. 2000).

Although Plaintiff does not allege Gielow communicated his reason for termination to a third party in the Complaint, Plaintiff alleged in the declaration that Gielow specifically told an outside retailer that Plaintiff was terminated for poor performance. (Webber Decl. ¶16.) Such an allegation is sufficient to establish a non-fanciful possibility that Plaintiff may prove publication.

Plaintiff also asserts that he falls under the self-publication exception because he was forced to explain the reason for termination to prospective employers. A defendant may be liable for a plaintiff's self-publication of a defamatory statement when: "'[1] the person defamed is operating under a strong compulsion to republish the defamatory statement; and [2] the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.'" *Reese*, 693 F. Supp. 2d at 1189 (quoting *McKinney v. Cnty. of Santa Clara*, 110 Cal. App. 3d 787, 797-98 (1st Dist. 1980)).

Defendants argue that Plaintiff did not have a strong compulsion to explain to his potential employers the reason for his termination. Relying on *Davis v. Consolidated Freightways*, 29 Cal. App. 4th 354 (4th Dist. 1994), Defendants argue that without receiving a negative job reference, Plaintiff "could have avoided 'defaming himself'" and thus did not have a strong compulsion to explain away the reason for termination. (Notice of Removal at 11.)

*Davis* is inapposite. The court in *Davis* rejected plaintiff's argument that he had a strong compulsion to self-publish in light of the employer's strictly enforced policy against giving out information to prospective employers as well as the limited communication among the personnel of

the company regarding plaintiff's reason for termination. 29 Cal. App. 4th at 373. In the present case, however, Plaintiff has alleged that he was aware that prospective employers would learn of his reason for termination based on his knowledge of the retail golf community in San Diego and his over 30 years of experience in golf sales. (Webber Decl. ¶ 18.) Moreover, his fears were confirmed when he learned of Gielow's statement regarding his alleged poor performance to an outside third-party retailer. (*Id.* ¶¶ 16, 18.) Based on the facts Plaintiff has alleged, Defendants fail to show that Plaintiff cannot establish that he was under a strong compulsion to publish the defamatory statement.

### C. The Common Interest Privilege

Defendants claim that the alleged statement was privileged and thus not actionable. "A privileged communication is one made: . . . [i]n a communication, *without malice*, to a person interested therein, . . . by one who is also interested." CAL. CIV. CODE § 47(c) (emphasis added). This subdivision applies to "a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant." *Id.*

Plaintiff has alleged facts to support the allegation that Gielow acted with malice, which would make the common interest privilege inapplicable here. For example, Plaintiff claims that the false and defamatory "poor performance" evaluation was a fabrication intended to serve as a pretext for his termination based on age discrimination. (Compl. ¶ 30.) Defendants have not demonstrated that there is no possibility that Plaintiff can defeat the presumption of privilege under the settled rules of California.

Based on the discussion above, the Court finds that there is a non-fanciful possibility that Plaintiff would be able to state a claim for IIED and defamation against Gielow. Gielow has not been fraudulently joined. Accordingly, because Plaintiff and Gielow are both citizens of California, this Court does not have jurisdiction under § 1332. This action is **REMANDED** to the San Diego County Superior Court.

///

///

## CONCLUSION

For the reasons stated above, the Motion to Remand is **GRANTED**. This action is **REMANDED** to the San Diego County Superior Court.

**IT IS SO ORDERED.**

DATED: October 9, 2012

HON. ROGER T. BENITEZ
United States District Judge